# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| HAYWARD HARRIS, JR.,<br>2023 Prince Albert Drive<br>Riverside, California 92507<br><br>        Plaintiff,<br><br>   v.<br><br>THE RIB DOCTOR LLC and GREGORY JACOBS, in his individual capacity,<br>1675 ½ Diagonal Road<br>Akron, Ohio 44320<br><br>        Defendants. | Civil Action No.   5:14-CV-02775<br><br>JUDGE: |

**COMPLAINT WITH DEMAND FOR JURY TRIAL**

Plaintiff, Hayward Harris, Jr. aka "The Rib Doctor" ("Plaintiff" or "Harris") brings this Complaint against Defendants, The Rib Doctor LLC and Gregory Jacobs aka "Greg" Jacobs, in his individual capacity ("Jacobs") (collectively, "Defendants"), and respectfully states as follows:

**JURISDICTION AND VENUE**

1. This is an action for trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114; unfair competition in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a); and unfair competition in violation of the common law of the State of Ohio.

2. This Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338.  This Court has jurisdiction over Harris's related common law claims under 28 U.S.C. §§ 1338 and 1367.

3. This Court has personal jurisdiction over Jacobs who is believed to reside in this district and is doing business in the State of Ohio and in this district.

4. This Court has personal jurisdiction over The Rib Doctor LLC, since The Rib Doctor LLC is a limited liability company organized under the laws of Ohio with a principal place of business in this district.

5. Defendants are operating a restaurant under the mark THE RIB DOCTOR, ELTORO THE RIB DOCTOR, and/or EL TORO THE RIB DOCTOR ("THE RIB DOCTOR Variant Marks") at 1675 ½ Diagonal Road, Akron, Ohio 44320.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, as set forth more fully below, a substantial part of the events or omissions giving rise to Plaintiff's claims in this matter occurred in the Northern District of Ohio.

## THE PARTIES

7. Plaintiff Hayward Harris is commonly known in the barbecue industry as "The Rib Doctor," and is well-known for his award-winning barbecue dishes. Mr. Harris is a California resident doing business through the entity The Rib Doctor, LLC, a California limited liability company located at 2023 Prince Albert Drive, Riverside, California 92507.

8. Defendants are operating a barbecue restaurant at 1675 ½ Diagonal Road, Akron, Ohio 44320 and are using one or more of THE RIB DOCTOR Variant Marks in connection therewith.

9. On information and belief, Defendant Greg Jacobs is referring to himself as "The Rib Doctor" and has been operating a carry-out barbeque restaurant and providing catering services and bottles of sauce throughout this Court's jurisdiction under one or more of THE RIB DOCTOR Variant Marks.

10. On information and belief, Defendant The Rib Doctor LLC has been operating a carry-out barbeque restaurant and providing catering services and bottles of sauce throughout this Court's jurisdiction under one or more of THE RIB DOCTOR Variant Marks.

## STATEMENT OF RELEVANT FACTS
## PERTINENT TO ALL COUNTS

11. Mr. Harris is a Southern cooking professional who makes one-of-a-kind barbecue dishes and operates a full-scale barbecue company in Riverside, California.

12. Mr. Harris competes nationally in the barbecue circuit, sells sauces and rubs, and has received wide media coverage as THE RIB DOCTOR.

13. Mr. Harris has been known as THE RIB DOCTOR for twenty-five years or more, particularly in the barbecue industry - before Defendants began their infringing use of Mr. Harris's mark.

14. Mr. Harris is the nationwide owner of the trademark THE RIB DOCTOR® in connection with barbeque sauces, rubs, and catering services. Mr. Harris owns two federal registrations issued by the United States Patent and Trademark Office for the trademark THE RIB DOCTOR, including U.S. Reg. No. 3,187,853 for barbeque sauces and rubs and U.S. Reg. No. 2,326,687 for catering services. These Registration are currently valid, subsisting and in full force and effect, and are registered on the Principal Trademark Register of the USPTO. Furthermore, these Registration are incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065.  True and accurate copies of the Certificates of Registration and status pages from the USPTO's database are attached as Exhibit A.

15. Mr. Harris's mark THE RIB DOCTOR has been extensively and continually used, advertised, and promoted by him in connection with his BBQ catering services and competitions across the United States since at least as early as 1991.  Substantial time, effort, and money have been expended over the years in ensuring that the purchasing public associates the mark THE RIB DOCTOR exclusively with Mr. Harris.

16. Mr. Harris has used his mark THE RIB DOCTOR extensively and continually in connection with his rubs and sauces across the United States since at least as early as 2006. Substantial time, effort, and money have been expended over the years in ensuring that the purchasing public associates THE RIB DOCTOR mark exclusively with Mr. Harris in connection with his rubs and sauces.

17. For many years – beginning prior to when Defendants adopted the mark THE RIB DOCTOR - Mr. Harris has been competing on the national cooking circuit under the name THE RIB DOCTOR and has won numerous awards.

18. Mr. Harris travels the circuit of the Kansas City Barbecue Society ("KCBS"), which is a nonprofit organization with a membership of over 15,000 barbecue enthusiasts from around the world. Mr. Harris competes in four categories: chicken, ribs, pork butt, and brisket. KCBS certified barbecue judges score food entries for appearance, taste, and tenderness. Mr. Harris has received several awards.

19. For a couple examples, in 2014, Mr. Harris was awarded the 1st Place Award of Excellence by the National Barbecue Association for "Honey Classic Barbecue Sauce" in the "Fruit Marinade" category and in the "Fruit Spicy" category, and in 2008, Mr. Harris was awarded the 1st Place Award of Excellence by the National Barbecue Association for "The Rib Doctor Honey BBQ Sauce" in the "People's Choice" category.

20. Mr. Harris not only competes but also judges BBQ competitions. He has been officially certified as a barbecue judge by the Kansas City Barbecue Society for nearly twenty years, and has also carried out his duties as judge under the moniker THE RIB DOCTOR.

21. For example, in 2002, Mr. Harris judged the 25th annual World Championship Barbecue Cooking Contest held in Memphis, Tennessee, again as THE RIB DOCTOR.

22. Mr. Harris's catering services and barbecue sauces are advertised nationwide online and through other means.

23. Defendants are not authorized retailers of Mr. Harris's rubs and sauces sold under the mark THE RIB DOCTOR.

24. Defendants are not affiliated in any way with Mr. Harris or his BBQ business.

25. Defendants operate without permission from Mr. Harris, a carry-out barbeque restaurant and provides catering services in Akron, Ohio, under one or more of THE RIB DOCTOR Variant Marks, all of which fully encompass Mr. Harris' mark THE RIB DOCTOR.

26. Upon information and belief, Defendants' business is comprised of a restaurant and food truck that offers catering services, and the food truck is driven to various locations throughout the Akron, Ohio, area for special events and for street-side barbecue sales.

27. The food truck operated by Defendants prominently displays the mark THE RIB DOCTOR, as shown here:



28. Additionally, upon information and belief, Defendants also sell bottles of barbecue sauce in Akron, Ohio, under one or more of THE RIB DOCTOR Variant Marks.

29. Currently, Defendants advertise their BBQ business through signage and billboards that prominently display the both the mark THE RIB DOCTOR as well as the mark ELTORO THE RIB DOCTOR:





30. Defendants' unauthorized use of THE RIB DOCTOR Variant Marks is likely to confuse customers into believing that Defendants' business, sauces, and catering and restaurant

services are operated or sold with Mr. Harris's approval or are somehow affiliated with or sponsored by Harris.

31. After Mr. Harris adopted and established his strong and valuable trademark rights, Defendants, without the permission or authorization of Mr. Harris used THE RIB DOCTOR Variant Marks in a manner that was and is likely to confuse customers as to (1) the nature of the relationship between Defendants and Mr. Harris and (2) Mr. Harris's approval of Defendants' offering of catering and restaurant services and sale of barbecue sauces under one or more of THE RIB DOCTOR Variant Marks. Defendants are using and have continued to use THE RIB DOCTOR Variant Marks to attract customers for the purpose of selling competing products and offer competing services in a manner that falsely suggests and implies to consumers that Defendants are somehow affiliated with or sponsored by Mr. Harris.

32. Because of Mr. Harris's long, extensive, and substantially exclusive use of the mark THE RIB DOCTOR in connection with catering services, sauces and rubs, and Mr. Harris's prominence in the barbecue industry and on the national barbecue competitive circuit, Defendants were, or should have been, fully aware of Mr. Harris's trademark rights in THE RIB DOCTOR prior to their use of THE RIB DOCTOR Variant Marks.

**DEFENDANTS' INTENTIONAL INFRINGEMENT**

**OF THE RIB DOCTOR MARK**

33. If Defendants were not aware of Mr. Harris's use of the mark THE RIB DOCTOR when they started using THE RIB DOCTOR Variant Marks, they became well aware of Mr. Harris when they received a cease and desist letter from Mr. Harris's counsel dated September 4, 2012, asking Jacobs to cease and desist from all use of THE RIB DOCTOR and

cease and desist from representing himself as "The Rib Doctor". A copy of this letter is attached hereto as Exhibit B.

34. Jacobs failed to acknowledge receipt of this letter, so Mr. Harris's counsel sent a second cease and desist letter to Jacobs on October 30, 2012. Jacobs failed to acknowledge receipt of the letter. A copy of this letter is attached hereto as Exhibit C.

35. Although Defendants did not respond in writing to these cease and desist letters, they took several steps to change their advertising but failed to stop using THE RIB DOCTOR Variant Marks.

36. Specifically, Defendants ceased using the commercial website www.theribdr.com which previously advertised their catering services, restaurant services, and barbecue sauces, but continued to engage in other forms of online advertising.

37. Similarly, Defendants stopped using a Facebook under a page titled THE RIB DOCTOR which had previously advertised their catering services, restaurant services, and barbecue sauces and began using instead a Facebook page titled EL TORO THE RIB DOCTOR.

38. In an attempt to exhaust all opportunities for dialog and avoid litigation, Mr. Harris's counsel sent a third cease and desist letter to Jacobs dated January 9, 2013. A copy of this letter is attached hereto as Exhibit D.

39. On January 11, 2013, Jacobs called counsel for Mr. Harris to discuss the cease and desist letters. During this phone call, Jacobs represented that he intended to close his business in August of 2013, that he would not be renewing his lease, and that after August 2013, would no longer operate a business under a mark that included THE RIB DOCTOR.

40. Based on these representations, Mr. Harris agreed that if Jacobs did not use THE RIB DOCTOR Variant Marks after August 2013, Mr. Harris would consider this matter closed.

On January 16, 2013, Mr. Harris's counsel sent Jacobs a letter confirming the agreement. A copy of this letter is attached hereto as Exhibit E.

41.     Around the same time, Defendants ceased use on Facebook of the marks EL TORO THE RIB DOCTOR and THE RIB DOCTOR.

42.     Subsequently, on April 4, 2013, and despite the representations that Jacobs was going out of business, Jacobs formed the entity The Rib Doctor LLC with the Ohio Secretary of State.  A screenshot of the Ohio Secretary of State Corporate Details is attached hereto as Exhibit F. This is the same entity name that Mr. Harris uses but which is organized under the laws of the state of California.

43.     Additionally, Defendants continued to offer catering and restaurant services and sell barbecue sauces under one or more of THE RIB DOCTOR Variant Marks after August 2013, knowingly in violation of Harris's rights and completely contrary to the agreement to cease use of THE RIB DOCTOR Variant Marks.

44.     Instead, Defendants intentionally expanded advertising for the goods and services offered under one or more of THE RIB DOCTOR Variant Marks.

45.     Specifically, on April 29, 2013, and May 1, 2013, Defendants or someone acting on their behalf posted videos to YouTube advertising Defendants' business under the mark THE RIB DOCTOR.

46.     After discovering these YouTube videos, Mr. Harris sent Jacobs yet another cease and desist letter on June 18, 2013. A copy of this letter is attached hereto as Exhibit G.

47.     Mr. Harris received no response to his June 18, 2013 letter, but learned that Defendants or someone acting on their behalf had again posted a video to YouTube advertising Defendants' business under the mark THE RIB DOCTOR.

48. On March 14, 2014, Mr. Harris filed a complaint with YouTube, asking YouTube to take down the infringing video. Upon notice of Harris's rights in the mark THE RIB DOCTOR, YouTube promptly removed the infringing video.

49. Shortly thereafter, Mr. Harris also became aware that Defendants were still operating a business under one or more of THE RIB DOCTOR Variant Marks, as well as operating a new website at www.theribdoctor.yolasite.com, which advertised Defendants' catering and restaurant services under the infringing mark THE RIB DOCTOR.

50. Mr. Harris contacted Yola and reported the infringement of his federal trademark registrations through Yola's takedown procedures, which resulted in the prompt removal of the infringing page from the Yola site.

51. Additionally, Mr. Harris became aware that Defendants were again advertising catering and restaurant services on Facebook, this time under the mark THE RIB DOC.

52. Harris filed an Intellectual Property Notification Complaint with Facebook on April 21, 2014, and the page was quickly removed from Facebook.

53. In a final effort to avoid litigation, Mr. Harris sent a final cease and desist letter on May 5, 2014, demanding that Defendants immediately cease all use of THE RIB DOCTOR Variant Marks. A copy of this letter is attached hereto as Exhibit H.

54. Defendants ignored the letter and offered no response or excuse for their continued disregard for Mr. Harris's rights or for failing to abide by Jacob's agreement to stop using an infringing mark.

55. Defendants continue to use THE RIB DOCTOR Variant Marks in violation of Harris's rights wantonly, willfully, and in bad faith.

56. As a result of Defendants' actions, the relevant public is likely to be confused, mistaken, and deceived into wrongfully associating Defendants' business with Mr. Harris or believing that Mr. Harris somehow authorizes, approves, or sponsors or is otherwise affiliated with Defendants' carry-out barbeque restaurant, catering services, and sauces.

57. As a result of Defendants' unlawful conduct, false representations, and unfair practices, Harris has suffered substantial damages.  Defendants' actions as described above have and will continue to irreparably injure Mr. Harris's goodwill, business reputation, and valuable intellectual property, including his trademarks.

## CAUSES OF ACTION

### COUNT ONE
**(Federal Trademark Infringement in Violation of Section 32 of the Lanham Act)**

58. Mr. Harris incorporates and adopts by reference each and every allegation in the foregoing paragraphs of this Complaint.

59. Mr. Harris owns the mark THE RIB DOCTOR in connection with barbecue related catering services, sauces and rubs, which is the subject of two federal, incontestable registrations that are valid and are in full force and effect.

60. Mr. Harris's federal registrations for the mark THE RIB DOCTOR are incontestable.

61. Mr. Harris commenced use of the mark THE RIB DOCTOR before Defendants and has priority in the mark THE RIB DOCTOR in connection with said barbecue related goods and services.

62. Defendants' unauthorized advertising, marketing, and operation of a carry-out barbeque restaurant and offering of catering services as alleged herein, is likely to deceive,

mislead, and confuse the relevant public. Defendants' actions constitute trademark infringement in violation of Section 32(a) of the Lanham Act, 15 U.S.C. § 1114.

63.     Likewise, Defendants' unauthorized advertising, marketing, and sale of bottles of sauce using Mr. Harris's registered mark THE RIB DOCTOR, as alleged herein, is likely to deceive, mislead, and confuse the relevant public. Defendant's actions constitute trademark infringement in violation of Section 32(a) of the Lanham Act, 15 U.S.C. § 1114.

64.     Defendants were or should have been, at all times, fully aware of Mr. Harris's trademark rights. Defendants' continued use of one or more of THE RIB DOCTOR Variant Marks in violation of Mr. Harris's rights, particularly after receipt of Mr. Harris's multiple cease and desist letters, is wanton and willful.

65.     Defendants use and continue to use one or more of THE RIB DOCTOR Variant Marks in bad faith with actual knowledge of (1) the reputation and goodwill associated with Mr. Harris's THE RIB DOCTOR mark and (2) Mr. Harris's ownership of his THE RIB DOCTOR mark.

66.     As a result of Defendants' ongoing infringement as alleged herein, Mr. Harris suffered and will continue to suffer damage, while Defendants are unjustly enriched at Mr. Harris's expense.

67.     As a result of the acts of Defendants as alleged herein, Mr. Harris suffered and will continue to suffer damage to his goodwill, reputation, and business interests. Mr. Harris has no adequate remedy at law for such infringement of Mr. Harris's registered mark THE RIB DOCTOR. Unless Defendants are enjoined, Mr. Harris will continue to suffer irreparable harm.

## COUNT TWO
**(Unfair Competition in Violation of Section 43 of the Lanham Act)**

68. Mr. Harris incorporates and adopts by reference each and every allegation in foregoing paragraphs of this Complaint.

69. The mark THE RIB DOCTOR as used in connection with barbeque sauces, rubs, cooking competitions and catering services is a distinctive mark that has become exclusively associated with Mr. Harris through continuous, extensive, and widespread use of the mark in advertising, promoting, and marketing Harris's barbecue sauces, rubs, catering services, and participation in barbecue competitions over the past twenty-five years.  As a result, the mark THE RIB DOCTOR exclusively identifies Harris's BBQ business, as further evidenced by his incontestable federal trademark registrations.

70. By reason of Defendants' wrongful use of one or more of THE RIB DOCTOR Variant Marks in connection with operating a carry-out barbeque restaurant and providing catering services as well as selling barbecue sauces, customers and prospective customers of Defendants' products and services are deceptively likely to believe that the services offered and products sold by Defendants are affiliated, connected, associated, sponsored or otherwise approved by Mr. Harris or that Defendants are somehow affiliated, connected, associated, sponsored or otherwise approved by Mr. Harris, when in fact Defendants have no connection or affiliation whatsoever with Mr. Harris.

71. Defendants' unauthorized use in commerce of one or more of THE RIB DOCTOR Variant Marks constitutes unfair competition, passing off and false designation of origin, which is likely to cause confusion, or to cause mistake, or to deceive customers as to the affiliation, connection, or association of Defendants with Mr. Harris in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

72. Defendants were or should have been fully aware of Mr. Harris and his rights in the mark THE RIB DOCTOR, but intentionally used and continued to use one or more of THE RIB DOCTOR Variant Marks with actual knowledge of (1) the reputation and goodwill associated with Mr. Harris's THE RIB DOCTOR mark and (2) Mr. Harris's ownership of his THE RIB DOCTOR mark.

73. As a result of the acts of Defendants as alleged herein, Mr. Harris suffered and will continue to suffer damage, while Defendants are unjustly enriched at Mr. Harris's expense.

74. As a result of the acts of Defendants as alleged herein, Mr. Harris suffered and will continue to suffer damage to his goodwill, reputation, and business interests. Mr. Harris has no adequate remedy at law for such infringement of Mr. Harris's registered THE RIB DOCTOR mark. Unless Defendants are enjoined, Mr. Harris will continue to suffer irreparable harm.

**COUNT THREE**
**(Unfair Competition in Violation of Ohio Revised Code § 4165.02, et seq.)**

75. Mr. Harris incorporates and adopts by reference each and every allegation in foregoing paragraphs of this Complaint.

76. Mr. Harris has advertised and promoted his BBQ goods and/or services under the mark THE RIB DOCTOR in the State of Ohio and in this District.

77. By virtue of Mr. Harris's frequent participation in barbecue competitions under the name THE RIB DOCTOR and use of the mark THE RIB DOCTOR in connection with various cooking competitions and events dating back twenty-five years or more, the mark THE RIB DOCTOR has become exclusively associated with Mr. Harris. As a result, the mark THE RIB DOCTOR exclusively identifies Mr. Harris, as further evidenced by his incontestable federal trademark registrations.

78. Defendant's unauthorized use of one or more of THE RIB DOCTOR Variant Marks on barbecue sauces and in connection with a carry-out barbecue restaurant and catering services is in violation of the common law of the State of Ohio, in that such use of one or more of THE RIB DOCTOR Variant Marks is likely to continue to cause confusion, among the relevant public as to any affiliation, connection, association, or sponsorship of Defendants by Mr. Harris, when in fact Defendants have no connection or affiliation whatsoever with Mr. Harris.

79. Defendants' actions constitute unfair competition as defined by Ohio Revised Code § 4165.02, *et seq*.

80. Defendants were or should have been fully aware of Mr. Harris and his trademark rights. On information and belief, Defendants used and continue to use one or more of THE RIB DOCTOR Variant Marks in bad faith with actual knowledge of (1) the reputation and goodwill associated with Mr. Harris's THE RIB DOCTOR mark and (2) Mr. Harris's ownership of his THE RIB DOCTOR mark.

81. As a result of the acts of Defendants as alleged herein, Mr. Harris suffered and will continue to suffer damage, while Defendants are unjustly enriched at Mr. Harris's expense.

82. As a result of the acts of Defendants as alleged herein, Mr. Harris suffered and will continue to suffer damage to his goodwill, reputation, and business interests. Mr. Harris has no adequate remedy at law for such infringement of Mr. Harris's registered THE RIB DOCTOR mark. Unless Defendants are enjoined, Mr. Harris will continue to suffer irreparable harm.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Harris prays for a judgment against Defendants as follows:

1. That Defendants and any officers, agents, affiliates, servants, employees, and attorneys, those persons in active concert or participation with Defendants who receive actual notice of the court's order by personal service or otherwise, any other aliases or company names under which Defendants conduct or attempt to conduct business, and all persons, companies, and entities acting on behalf of Defendants be enjoined from, directly or indirectly, continuing their actions in violation of the Lanham Act, and the common law in the State of Ohio, including:

    A. using the mark THE RIB DOCTOR, THE RIB DOC, ELTORO THE RIB DOCTOR, and/or EL TORO THE RIB DOCTOR or any other trade name, trademark, trade dress, service mark, domain name, designation, symbol, or device containing the phrase "RIB DOCTOR" or "RIB DOC", or any variant or any colorable imitations thereof (collectively, "THE RIB DOCTOR Variant Marks");

    B. promoting, offering for sale, or selling products and/or services using any of THE RIB DOCTOR Variant Marks through any channels of trade now or hereafter developed;

    C. doing any act or thing calculated or likely to cause confusion or mistake in the minds of members of the public or the trade, or prospective purchasers of Defendants' products/services, as to the source of products and/or services marketed, advertised, promoted, sold, or offered for sale by Defendants;

  D. doing any act or thing calculated or likely to deceive members of the public or trade, or prospective purchasers, into believing that there is some affiliation, sponsorship, or connection between Defendants and Mr. Harris or that Defendants' products and/or services are marketed, advertised, promoted, sponsored, offered for sale, sold, by or otherwise affiliated with Mr. Harris or advertised or sold with Mr. Harris's authorization, consent, approval, or permission;

2. that Defendants, in accordance with 15 U.S.C. § 1116(a), be directed to file with this Court and serve upon Mr. Harris within thirty days after entry of the injunction a report in writing, under oath, setting forth in detail the manner and form in which they have complied with the injunction;

3. that Mr. Harris recover his actual damages sustained as a result of Defendants' wrongful actions;

4. that Defendants be required to account for and pay over to Mr. Harris all gains, profits, and advantages realized as a result of Defendants' wrongful actions;

5. an award to Mr. Harris of trebled damages;

6. an award to Mr. Harris of pre-judgment and post-judgment interest;

7. an award to Mr. Harris of both the costs of this action and the reasonable attorneys' fees incurred by Mr. Harris in prosecuting this action;

8. a jury trial on all issues so triable; and

9. that Mr. Harris recover such further relief to which he may be entitled.

      Respectfully submitted,


Dated: December 17th, 2014      */s/ John M. Skeriotis*
      John Skeriotis (Ohio Bar #0069263)
      Emerson Thomson Bennett
      1914 Akron-Peninsula Rd.
      Akron, Ohio 44313
      Telephone:     (330) 434-9999
      Facsimile:     (330) 434-8888
      jms@etblaw.com

      Joel T. Beres *(pro hac motion to be filed)*
      KY State Bar No.84376
      STITES & HARBISON, PLLC
      400 West Market Street, Suite 1800
      Louisville, KY  40202-3352
      Telephone:     (502) 587-3400
      Facsimile:     (502) 587-6391
      jberes@stites.com

      Jennifer L. Kovalcik
      *(pro hac motion to be filed)*
      TN State Bar No. 030003
      STITES & HARBISON, PLLC
      401 Commerce Street, Suite 800
      Nashville, TN 37027
      Telephone:     (615) 782-2200
      Facsimile:     (615) 742-4138
      jkovalcik@stites.com

      Jennifer L. Kovalcik
      *(pro hac motion to be filed)*
      VA State Bar No. 80386
      STITES & HARBISON, PLLC
      1199 North Fairfax Street, Suite 900
      Alexandria, VA 22314
      Telephone:     (703) 837-3932
      Facsimile:     (703) 518-2952
      mtaube@stites.com

      *Attorneys for Plaintiff*
      *Hayward Harris*

- 19-

Case: 5:14-cv-02775-BYP Doc #: 1 Filed: 12/17/14 19 of 19. PageID #: 19